UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MIKAYELA M.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. C18-5754 RSL

ORDER REVERSING AND
REMANDING DENIAL OF
BENEFITS

Plaintiff Mikayela M. appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner"), which denied her application for

supplemental security income benefits under Title XVI of the Social Security Act (the

"Act"), 42 U.S.C. §§1381-83f, after a hearing before an administrative law judge

("ALJ").  For the reasons set forth below, the Commissioner's decision is REVERSED

and the case is REMANDED for further administrative proceedings under sentence four

of 42 U.S.C. § 405(g).

I.      FACTS AND PROCEDURAL HISTORY

Plaintiff is a 23-year-old woman with a high school education through an

individual education plan.  See AR at 25, 55.  Plaintiff protectively filed an application

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 1

for supplemental security income benefits on July 20, 2015.  Id. at 55, 144-54.  Her

claims were denied on initial administrative review and on reconsideration.  Id. at 55-77.

ALJ Christopher Dillon held a hearing on May 5, 2017.  Id. at 31-53.  On August 21,

2017, ALJ Dillon issued a decision denying Plaintiff's claim for benefits.  Id. at 15-26.

On July 20, 2018, the Appeals Council denied review.  Id. at 1-3.  Plaintiff then sought

review before this Court.

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. §405(g), the Court may set aside the Commissioner's denial

of social security benefits when the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d

1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a

preponderance, and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and resolving any other

ambiguities that might exist.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

While the Court is required to examine the record as a whole, it may neither reweigh the

evidence nor substitute its judgment for that of the Commissioner.  Thomas v. Barnhart,

278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one

rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

//

# III. EVALUATING DISABILITY

Plaintiff bears the burden of proving that she is disabled within the meaning of the Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §423(d)(2)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. See 20 C.F.R. §416.920. The claimant bears the burden of proof during steps one through four. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. Id. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. Id. At step two, the claimant must establish that she

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. §416.972.

has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. 20 C.F.R. §416.920(c). If the claimant does not have such impairments, she is not disabled. Id. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §416.920(d). A claimant whose impairment meets or equals one of the listings for the required 12-month duration is disabled. Id.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §416.920(g); Tackett, 180 F.3d at 1099-100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

IV.   DECISION BELOW

On August 21, 2017, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since July 20, 2015, the application date. See 20 C.F.R. §416.971-76.

2. The claimant has the following severe impairments: Plantar fasciitis, bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder. See 20 C.F.R. §416.920(c).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. §§416.920(d), 416.925(d), 416.926.

4. The claimant has the RFC to perform work that involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds; pushing or pulling similar amounts; sitting, standing, and walking for six hours each in an eight-hour day; no more than frequent postural activity; no more than occasional interaction with supervisors, coworkers, and the public; and no more than simple, routine task outside of an assembly line production environment.

5. The claimant has no past relevant work. See 20 C.F.R. §416.965.

6. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. See 20 C.F.R. §§416.969, 416.969(a).

7. The claimant has not been under a disability, as defined in the Act, since July 20, 2015, the application date. See 20 C.F.R. §416.920(g).

AR at 15-26.

## V.    ISSUES ON APPEAL

The issues on appeal are:

A.    Whether the ALJ properly evaluated Plaintiff's testimony.

B.    Whether the ALJ properly evaluated the medical evidence, including the

opinions of John Wolfe, Ph.D., Carla van Dam, Ph.D., Peter Weiss, Ph.D.,

and Steven Johansen, Ph.D.

C.      Whether the ALJ properly evaluated the lay witness evidence.

Pl. Op. Br. (Dkt. 10) at 1-2.  Plaintiff also contends that if the Court finds error, it should

remand for an award of benefits.  Id.

## VI.    DISCUSSION

## A.    The ALJ Harmfully Erred in Rejecting Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting Plaintiff's symptom testimony.[2]  Pl.

Id. at 12-14.  The Court agrees.

Plaintiff testified that she suffers from anxiety and has difficulty interacting with

others.  See id. at 37-38, 40.  She testified that she takes lithium, which has stabilized her

conditions, but not to the point where she could work.  See id. at 39-40.  Plaintiff testified

that she has applied for customer service jobs, but has never had a job.  Id. at 41-42.

The Ninth Circuit has "established a two-step analysis for determining the extent

to which a claimant's symptom testimony must be credited."  Trevizo v. Berryhill, 871

F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has

presented objective medical evidence of an impairment that "'could reasonably be

expected to produce the pain or other symptoms alleged.'"  Id. (quoting Garrison v.

Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only

show that the impairment could reasonably have caused some degree of the symptom;

she does not have to show that the impairment could reasonably be expected to cause the

---

[2] Plaintiff does not challenge the ALJ's findings regarding her physical symptom
testimony.  See id.  The Court therefore focuses its discussion on Plaintiff's testimony regarding
her mental impairments.

severity of the symptom alleged.  Id.  The ALJ did not explicitly address this first step, but moved on to the second step, implicitly finding the first step satisfied.  See AR at 20.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'"  Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014-15).  In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail.  See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

The ALJ held that Plaintiff's testimony was not wholly consistent with the medical evidence.  AR at 20.  The ALJ reasoned that Plaintiff had largely normal mental health treatment notes, had a positive response to treatment, and failed to fully comply with her treatment.  Id. at 20-22.

The ALJ's reasoning is unconvincing.  "An ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement . . . with an understanding of the patient's overall well-being and the nature of her symptoms.'"  Attmore v. Colvin, 827 F.3d 872, 877 (9th Cir. 2016) (quoting Garrison, 759 F.4d at 1017).  Plaintiff had normal findings at times, but continued to experience symptoms consistent with her testimony.  For example, Plaintiff's mood and affect were reported as normal in March 2015, but she was also

positive for depression and hallucinations.  See AR at 404.  In September 2015, Plaintiff

had normal speech, thought processes, and behavior, but her mood and affect remained

anxious.  Id. at 428.

Moreover, although Plaintiff experienced improvement in her symptoms, that does

not support rejecting her testimony.  "'There can be a great distance between a patient

who responds to treatment and one who is able to enter the workforce . . . .  The very

nature of bipolar disorder is that people with the disease experience fluctuations in their

symptoms, so any single notation that a patient is feeling better or has had a good day

does not imply that the condition has been treated.'"  Garrison, 759 at 1017 n.23 (quoting

Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011)).  Plaintiff reported improvement in

early 2017, but Dr. Weiss noted in a report from May 2017—a report the ALJ failed to

address—that Plaintiff continued to have severe limitations.  See AR at 561, 564, 572,

577-81.

Finally, the ALJ unreasonably interpreted the evidence in finding that Plaintiff's

failure to reliably take her medication justified rejecting her testimony.  "[W]e do not

punish the mentally ill for occasionally going off their medication when the record

affords a compelling reason to view such departures from prescribed treatment as part of

claimant's underlying mental afflictions."  Garrison, 759 F.3d at 1018 n.24.  The ALJ did

not consider whether Plaintiff's noncompliance with her medications was due to

Plaintiff's bipolar disorder, a likely result.  See Winter v. Berryhill, 711 F. App'x 847,

851 (9th Cir. 2017) (noting that "noncompliance with treatment by individuals with

bipolar disorder is consistent with their diagnosis") (citing <u>Brewes v. Comm'r of Soc. Admin.</u>, 682 F.3d 1157, 1164 (9th Cir. 2012)); <u>see also</u> AR at 475 (noting that Plaintiff missed doses of lithium due to her fear that it was addictive).

In sum, the ALJ failed to reasonably interpret the evidence, and failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony regarding her mental impairments. These errors were harmful as the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1056 (9th Cir. 2006).

**B.     The ALJ Harmfully Erred in Evaluating the Medical Evidence**

Plaintiff argues that the ALJ erred in evaluating the medical evidence. Pl. Op. Br. at 3-10. The Court agrees.

       1.     <u>The ALJ Harmfully Erred in Evaluating the Opinions of Dr. Wolfe and Dr. van Dam</u>

Dr. Wolfe reviewed Plaintiff's medical records as part of Plaintiff's initial disability determination. AR at 58-62. Dr. Wolfe opined, among other things, that Plaintiff was "capable of superficial interaction with coworkers and supervisors, however she would work best when not interacting with the public . . . ." <u>Id.</u> at 61. Dr. Wolfe opined that Plaintiff was "capable of responding appropriately [to] simple changes in the work setting." <u>Id.</u> at 62.

Dr. van Dam reviewed Plaintiff's medical records as part of the reconsideration of Plaintiff's disability claim. AR at 70-75. Dr. van Dam's opinions were identical to Dr.

Wolfe's opinions.  See id. at 60-62, 73-75.

The ALJ gave the opinions of Dr. Wolfe and Dr. van Dam great weight.  Id. at 22.
The ALJ "substantially incorporate[d]" the functional limitations to which Dr. Wolfe and
Dr. van Dam opined, but found that Plaintiff could have occasional rather than superficial
interaction with the public.  Id.  The ALJ reasoned that Plaintiff's "attempts to work in
customer service indicate[] somewhat more ability to work with the public."  Id.

The ALJ's reasoning fails.  The fact that Plaintiff applied for customer service jobs
is not enough to discount Dr. Wolfe and Dr. van Dam's opinions that Plaintiff could have
superficial interaction with the public.  Plaintiff never had a customer service job—or any
other job for that matter—and testified that she failed when trying to work at one.  See id.
at 41-42.  And the ALJ did not even address the opinion of Dr. Wolfe and Dr. van Dam
that Plaintiff was capable of responding to simple workplace changes.

The ALJ's errors were once again harmful.  The Commissioner argues that the
jobs the ALJ identified adequately accommodate the limitations about which Dr. Wolfe
and Dr. van Dam opined.  Def. Resp. Br. (Dkt. 11) at 8-9.  But the Court is not in a
position to decide what jobs may accommodate superficial versus occasional social
interaction, nor can the Court determine whether the jobs the ALJ identified would
accommodate a limitation to simple workplace changes.  See Andrews, 53 F.3d at 1044.
The ALJ therefore harmfully erred in failing to fully account for the opinions of Dr.
Wolfe and Dr. van Dam.

//

2.      The ALJ Harmfully Erred in Evaluating the Opinions of Dr. Weiss and Dr. Johansen

Dr. Weiss examined Plaintiff on May 11, 2015.  AR at 407-13.  Dr. Weiss opined that Plaintiff was severely limited in her abilities to (a) perform activities within a schedule, maintain attendance, and be punctual within customary tolerances without special supervision; (b) complete a normal work day and week without interruptions from her psychologically-based symptoms; and (c) set realistic goals and plan independently. Id. at 411.

Dr. Johansen reviewed Dr. Weiss's May 2015 opinions.  Id. at 486-89.  Dr. Johansen concurred with Dr. Weiss regarding Plaintiff's limitations.  Id. at 488.

Dr. Weiss examined Plaintiff again on May 12, 2017.  Id. at 577-81.  Dr. Weiss opined that Plaintiff would have the same severe limitations as before, except that she was no longer severely limited in her ability to set realistic goals and plan independently. Id. at 579.

The ALJ gave Dr. Weiss's 2015 opinions and Dr. Johansen's opinions little weight.  Id. at 23.  The ALJ reasoned that these opinions were inconsistent with the medical evidence, and the opinions of Dr. Wolfe and Dr. van Dam.  Id.  The ALJ also stated that Dr. Weiss "noted [Plaintiff's] tendency to exaggerate her symptoms, but nevertheless assessed significant functional limitations."  Id.  And the ALJ found that Dr. Weiss's opinions were inadequately supported: "While Dr. Weiss indicates 'severe' problems associated with completing work, his narrative focused on [Plaintiff's] poor social ability.  [Plaintiff's] poor social ability alone is not enough to justify disability

since [Plaintiff] is still applying for customer service jobs with vocational assistance." Id.

The ALJ did not discuss Dr. Weiss's 2017 opinion. See id. at 23. The Commissioner concedes error with respect to this opinion, but argues that any error was harmless because the ALJ's reasons with respect to Dr. Weiss's 2015 opinions apply equally to the 2017 opinion. Def. Resp. Br. at 4-5. Because the Court finds that the ALJ harmfully erred in rejecting Dr. Weiss's 2015 opinions, the Court concludes that the ALJ also harmfully erred in rejecting Dr. Weiss's 2017 opinion.

An ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the opinion of an examining doctor when it is contradicted. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing Andrews, 53 F.3d at 1042). The ALJ did not do so.

The ALJ's first reason for rejecting Dr. Weiss's 2015 opinions and Dr. Johansen's opinions—that they are inconsistent with the overall medical evidence—mirrors the ALJ's first reason for rejecting Plaintiff's testimony. See id. at 20-22. This reason fails for the same reasons it failed with respect to Plaintiff's testimony. See supra Part VI.A.

The ALJ's next reason for rejecting Dr. Weiss's 2015 opinions and Dr. Johansen's opinions—that they were inconsistent with the opinions of Dr. Wolfe and Dr. van Dam— is also not a valid reason on its own. The ALJ is entitled to weigh the medical opinions and choose some over others, but the ALJ must give reasons for doing so. See Lester, 81 F.3d at 830-31. Simply stating that the ALJ has made a choice is not the same as giving a reason for that choice.

The ALJ's rejection of Dr. Weiss's 2015 opinions based on Plaintiff's alleged exaggeration of her symptoms is similarly unavailing. Dr. Weiss himself noted Plaintiff's possible exaggeration, yet the ALJ's determination presumes that Dr. Weiss failed to account for this in forming his opinions. That is not a rational reading of the evidence, particularly given the fact that Dr. Weiss made objective findings to support his opinions. See AR at 409-13; see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting that clinical interviews and mental status exams are "objective measures").

The ALJ's final reason for rejecting Dr. Weiss's 2015 opinions—that his narrative focused on Plaintiff's social disability while his work limitations focused on Plaintiff's inability to complete work—fails because it is not a reasonable or adequately explained interpretation of the evidence. An individual's inability to appropriately interact with others could certainly impede her ability to complete an ordinary work day. And, contrary to the ALJ's statement, Dr. Weiss's reports discussed more than just Plaintiff's social limitations. Dr. Weiss noted that Plaintiff had feelings of hopelessness, sadness, and even "vegetative symptoms of depression." AR at 407. Dr. Weiss noted that Plaintiff's "speech was pressured and she expressed some delusional ideation." Id. at 412. Plaintiff's fund of knowledge and concentration were both outside normal limits. Id. at 413. The ALJ's explanation for rejecting Dr. Weiss's 2015 opinions in light of these facts was inadequate to support the ALJ's conclusion.

None of the reasons the ALJ gave for rejecting Dr. Weiss's 2015 opinions and Dr. Johansen's opinions survives scrutiny, and the ALJ thus erred. See Lester, 81 F.3d at

830-31.  The ALJ's errors must be deemed harmful because the Court cannot state with certainty that the RFC included all of Plaintiff's demonstrated limitations.  See Hill v. Astrue, 698 F.3d 1153, 1162-63 (9th Cir. 2012).  The ALJ's decision was thus not supported by substantial evidence.  Id.  The ALJ therefore harmfully erred in evaluating the medical evidence.

**C.      The ALJ Harmfully Erred in Evaluating the Lay Witness Statements**

Plaintiff argues that the ALJ erred in rejecting the statements from her mother and father.  Pl. Op. Br. at 11-12.  The Court agrees.

Plaintiff's mother submitted three statements, one in July 2015,[3] one in November 2015, and another in April 2017.  AR at 159-66, 210-18, 396-98.  She described Plaintiff's daily activities and limitations.  See id.  Plaintiff's mother stated that Plaintiff has severe anxiety issues and mood swings.  Id. at 159.  Plaintiff's mother stated that Plaintiff does not handle her personal care on a daily basis, and cannot handle crowds. Id. at 211.  Plaintiff's mother stated that Plaintiff "often gets mad for no apparent reason," and breaks personal items.  Id. at 397.

Plaintiff's father submitted a statement in April 2017.  Id. at 400.  He stated that Plaintiff struggles with suicidal ideations.  Id.  He stated that Plaintiff "is shy and reserved" in public, avoiding situations where others will be present.  Id.  He stated that "it is hard for [Plaintiff] to take the initiative and make decisions."  Id.

_____

[3] The July 2015 statement was completed on a form indicating that it was to be filled out by Plaintiff, but it is signed by Plaintiff's mother, and written from Plaintiff's mother's perspective.  See AR at 159-66.

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout, 454 F.3d at 1053). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. Molina, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." Bruce, 557 F.3d at 1115 (quoting Stout, 454 F.3d at 1054).

The ALJ only specifically referenced Plaintiff's mother's July 2015 statement. See AR at 24. He rejected Plaintiff's mother's statements because "they [were] not fully consistent with the medical evidence record, including . . . mental impairments that are effectively treated by [Plaintiff's] prescribed medications." Id.

The ALJ once again erred. That Plaintiff experiences some benefit from her prescribed medications does not establish that her symptoms are under control. See supra Part VI.A. Moreover, the ALJ "was required to consider and comment upon competent lay testimony." Bruce, 557 F.3d at 1115. The ALJ failed to even address Plaintiff's mother's November 2015 and April 2017 statements, and Plaintiff's father's April 2017 statement. See AR at 24.

The ALJ's errors must be deemed harmful. Had the ALJ properly considered the lay witness statements from Plaintiff's parents, he may have reached a different disability determination. The ALJ's errors were consequential to the outcome, and thus harmful. See Stout, 454 F.3d at 1056.

//

**D.     Scope of Remand**

Plaintiff asks the court to remand for an award of benefits.  Pl. Op. Br. at 2.

Remand for an award of benefits "is a rare and prophylactic exception to the

well-established ordinary remand rule."  Leon v. Berryhill, 880 F.3d 1041, 1044 (9th Cir.

2017).  The Ninth Circuit has established a three-step framework for deciding whether a

case may be remanded for an award of benefits, known as the "credit-as-true" rule.  Id. at

1044-45.  First, the court must determine whether the ALJ has failed to provide legally

sufficient reasons for rejecting evidence.  Id. at 1045 (citing Garrison, 759 F.3d at 1020).

Second, the court must determine "whether the record has been fully developed, whether

there are outstanding issues that must be resolved before a determination of disability can

be made, and whether further administrative proceedings would be useful."  Treichler v.

Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and

quotation marks omitted).  If the first two steps are satisfied, the court must determine

whether, "if the improperly discredited evidence were credited as true, the ALJ would be

required to find the claimant disabled on remand."  Garrison, 759 F.3d at 1020.  "Even if

[the court] reach[es] the third step and credits [the improperly rejected evidence] as true,

it is within the court's discretion either to make a direct award of benefits or to remand

for further proceedings."  Leon, 880 F.3d at 1045 (citing Treichler, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings.  Plaintiff has

not presented any argument showing that the three steps of the credit-as-true rule have

been met.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th

Cir. 2008) (noting that courts "'ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief'") (quoting Paladin Assocs., Inc. v. Mont. Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003)).  Furthermore, as explained above, evidentiary conflicts remain that the Court is not in a position to resolve.  The Court cannot, for example, determine whether jobs exist that would allow for superficial interaction with the public or simple workplace changes, limitations to which Dr. Wolfe opined.  See supra Part VI.B.1.  Without resolution of this and other evidentiary issues, the Court cannot conclude that the ALJ would be required to find Plaintiff disabled here.  See Leon, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather than to remand for the payment of benefits, where the record revealed conflicts, ambiguities, or gaps in the evidence).

On remand, the ALJ must reevaluate Plaintiff's symptom testimony; the medical evidence, including the opinions of Dr. Wolfe, Dr. van Dam, Dr. Weiss, and Dr. Johansen; and the lay witness statements from Plaintiff's parents.  The ALJ shall conduct further administrative proceedings as necessary to reevaluate the disability determination in light of this opinion.

//

//

//

//

//

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 26th day of April, 2019.

Robert S. Lasnik
United States District Judge